## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEFFREY D'ALESSANDRO, | ) | 3:20-CV-536 (SVN) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARROW PHARMACY HOLDINGS, | ) | |
| LLC; PARTNERS PHARMACY, LLC; | ) | February 13, 2023 |
| PARTNERS OF CONNECTICUT, LLC; | ) | |
| PARTNERS PHARMACY SERVICES, | ) | |
| LLC; and CARE SOLUTIONS, LLC, | ) | |
| *Defendants*. | ) | |

## RULING AND ORDER ON PLAINTIFF'S MOTION TO STRIKE AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Sarala V. Nagala, United States District Judge.

In this employment discrimination action, Plaintiff Jeffrey D'Alessandro alleges that his former employer, Arrow Pharmacy Holdings, LLC ("Arrow"), discriminated against him on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 41-60 *et seq.* For their part, Defendants[1] contend that it was Plaintiff's poor performance in effectuating an expansion of Arrow's services, not his age, that motivated his termination. Defendants now seek summary judgment in their favor. In addition to opposing the motion for summary judgment, Plaintiff seeks to strike an attachment to Defendants' reply brief.

For the reasons described below, the Court finds that, although the attachment to Defendants' reply brief is not properly addressed via a motion to strike, the attachment was improperly filed and should not be considered. The Court also agrees with Plaintiff that there are

---

[1] Plaintiff has sued four other entities, in addition to Arrow: Partners Pharmacy, LLC; Partners of Connecticut, LLC; Partners Pharmacy Services, LLC; and Care Solutions, LLC (together, "Defendants").

genuine disputes of fact material to the question of whether Plaintiff's age was a but-for cause of Defendants' decision to terminate his employment, which preclude summary judgment in Defendants' favor. Accordingly, Plaintiff's motion to strike, ECF No. 101, is GRANTED IN PART and DENIED IN PART, and Defendants' motion for summary judgment, ECF No. 88, is DENIED.

## I.      FACTUAL BACKGROUND

### A.  Partners' Acquisition of Arrow Pharmacy

The record reveals the following facts, which are undisputed except when noted. In 2012, Plaintiff was hired to be the Pharmacist-in-Charge ("PIC") at Arrow Pharmacy, a mail-order pharmacy based in Farmington, Connecticut that shipped medications. Pl.'s Local Rule ("L. R.") 56(a)2 Statement ("St."), ECF No. 96, ¶¶ 3, 8, 10. Arrow Pharmacy was licensed to ship products to approximately thirty-four states. Pl.'s St. of Supplemental ("Suppl.") Facts, ECF No. 96, at 21 ¶ 2. As the PIC, Plaintiff was primarily responsible for maintaining Arrow Pharmacy's compliance with the applicable laws of all states where it shipped medications, including maintaining the pharmacy's licenses in all thirty-four states, as well as "running the day-to-day operations of the pharmacy." Pl.'s L. R. 56(a)2 St. ¶¶ 11–12. Plaintiff himself was licensed in fourteen states. Pl.'s St. of Suppl. Facts ¶ 2.

Defendant Partners Pharmacy, LLC ("Partners") is a long-term care pharmacy, servicing skilled nursing facilities, assisted living communities, and other long-term care providers across the United States. Pl.'s L. R. 56(a)2 St. ¶ 1. Defendant Care Solutions, LLC, is the parent company of Partners. Spero Dep., ECF No. 90-6, at 4. In January of 2014, Partners acquired Arrow Pharmacy and changed its name to simply Arrow. Pl.'s L. R. 56(a)2 St. ¶ 3. At that time, Partners hired Plaintiff to continue in his role as the PIC of Arrow, and soon thereafter Partners appointed

Plaintiff to also serve as Arrow's Director of Pharmacy.  *Id.* ¶¶ 15, 18.  Plaintiff was fifty-nine years old at that time.  *Id.* ¶ 14.  From Partners' acquisition of Arrow in 2014, until September of 2017, Plaintiff ran Arrow with little interference from Partners or the other Defendants,[2] *id.* ¶ 19, and his responsibilities were largely the same as before, Pl.'s Dep., ECF No. 90-4, at 5.  Plaintiff's performance evaluation, dated in June of 2017, reflected that he was performing well; Plaintiff scored "good" in every category.  ECF No. 96-25.

### B.  Partners' Expansion of Arrow

In September of 2017, Anthony Spero, who was forty-eight years old at that time, was appointed to the position of Chief Operations Officer at Partners.  Pl.'s L. R. 56(a)2 St. ¶ 21.  Soon thereafter, he appointed Frank Wang, who was forty-nine years old at that time, to the position of Vice President of Operations at Partners.  *Id.* ¶ 23.  As part of this role, Wang was responsible for overseeing Partners' operations in Connecticut and, consequently, Plaintiff began reporting to him.  *Id.* ¶ 24.  Spero and Wang decided to repurpose Arrow to provide mail-order services to the hospice pharmaceutical market.  *Id.* ¶ 25.  This new business model would complement Partners' operations as a long-term care pharmaceutical services provider while effectively utilizing Arrow's existing infrastructure and state licenses.  *See id.* ¶ 9.

On November 29, 2017, when Plaintiff was sixty-two years old, there was a discussion between Plaintiff, Spero, and Wang regarding the expansion of Arrow's services.  *Id.* ¶¶ 28, 31.  The parties dispute the takeaway from this discussion.  Defendants represent that "Spero and Wang asked Plaintiff to take the lead in spearheading the major expansion."  *Id.* ¶ 26.  Plaintiff recalls that Spero told him, "this is all you, you're going to run this thing, you're going to develop it,

---

[2] Defendants contend that Plaintiff "ran Arrow with very little supervision," whereas Plaintiff contends that Defendants "largely ignored and neglected Arrow" and particularly ignored his "requests for assistance."  Pl.'s L. R. 56(a)2 St. ¶ 19; Pl.'s St. of Suppl. Facts ¶ 3.

you're going to build it."  Pl.'s Dep., ECF No. 90-4, at 20.  Plaintiff, however, characterizes his involvement as "working on the transition team," Pl.'s St. of Suppl. Facts ¶ 5, and he denies that he was ever asked to "lead" the expansion, Pl.'s L. R. 56(a)2 St. ¶ 27.  *See also* Pl.'s St. of Suppl. Facts ¶ 6 (explaining that Plaintiff "started working right away on the tasks that he was assigned related to the transition").  The expansion was scheduled to occur by June 1, 2018.  *See id.* ¶ 5; Pl.'s L. R. 56(a)2 St. ¶ 4.

Plaintiff characterized his work at the beginning of the expansion, between the end of 2017 and early 2018, as "overwhelming."  Pl.'s L. R. 56(a)2 St. ¶ 32; Pl.'s Dep., ECF No. 90-4, at 23.  Specifically, in addition to Plaintiff's responsibilities satisfying Arrow's existing demand, Plaintiff was the only pharmacist at Arrow who could work the long hours expected to expand the scope of Arrow's services.  Pl.'s L. R. 56(a)2 St. ¶ 33.  Plaintiff represents that he worked six or seven days per week, up to ten to twelve hours per day, to ensure that the expansion would proceed as scheduled, although Defendants dispute these specific work hours.  *Id.* ¶ 34.

Sometime in early 2018, Plaintiff expressed to Wang that he was willing to work the "extra" hours required to effectuate the transition, but Wang responded that Plaintiff was "not a young person anymore," so they would "have to get other people to get on board with this."  Pl.'s Dep., ECF No. 90-4, at 27; *see* Pl.'s L. R. 56(a)2 St. ¶ 36.  Following this conversation, Plaintiff proposed hiring certain pharmacists to assist with the transition.  Pl.'s Aff., ECF No. 96-1, ¶ 21.  One of those pharmacists was Diane Vermiglio, who was close to Plaintiff in age and with whom Plaintiff had worked in the past.  Pl.'s L. R. 56(a)2 St. ¶ 37.  Plaintiff represents that Wang initially resisted hiring Vermiglio but did not resist hiring younger pharmacists, and that he wanted Plaintiff to find "people who would be energetic and go-getters and . . . people who would hustle."  Pl.'s Aff. ¶¶ 21–22; Pl.'s Dep., ECF No. 96-4, at 9.  Although Wang eventually agreed to hire

Vermiglio, Plaintiff claims Wang agreed to do so only after also hiring Andrew Russo, a younger pharmacist working at Partners' long-term care pharmacy located in East Windsor, Connecticut, to work as a "floater" at Arrow.  *See* Pl.'s Aff. ¶ 21–22; Pl.'s L. R. 56(a)2 St. ¶ 38; ECF No. 96-5.

Arrow's expansion continued through the spring of 2018, at which point—according to Defendants—Wang began to "question whether Plaintiff had the skills necessary to lead the transition."  Defs.' L. R. 56(a)1 St., ECF No. 90, ¶ 39.  Wang testified that, during his first visit to Arrow's facility sometime in the spring of 2018, he was "shocked about the condition of the pharmacy" because it was "very run down," "messy," "dirty," and the light was dim; Plaintiff denies this characterization.  Wang Dep., ECF No. 90-8, at 12–13; Pl.'s L. R. 56(a)2 St. ¶ 40. Wang testified that, for the three or four months leading up to the effective date of the expansion, he visited Arrow four or five days per week, Wang Dep., ECF No. 90-8, at 11; Plaintiff disputes this frequency but admits that Wang visited Arrow at least "periodically," Pl.'s Dep., ECF No. 90-4, at 26.  *See also* Russo Dep., ECF No. 96-10, at 7–8 (testifying that Wang visited Arrow "more days than not," about three to five days per week, in June of 2018).

In late May, Plaintiff and Wang discussed via text message the need to hire another pharmacist at Arrow.  Pl.'s St. of Suppl. Facts ¶ 9.  Wang stated that he would try to get Russo, who he described as a "kid" and "smart as a whip," to work at Arrow full-time.  *Id.*; ECF No. 96-27 at 2.

Also around late May or early June of 2018, Wang completed Plaintiff's performance evaluation.  Pl.'s L. R. 56(a)2 St. ¶ 44.  In the categories of "Functional/Technical Knowledge and Skills" and "Job Performance/Quality of Work," Wang characterized Plaintiff's work as "satisfactory."  ECF No. 96-9 at 1.  In the category of "Leadership, Controlling and Directing," Wang characterized Plaintiff's work as "fair" and requiring "more than normal supervision."  *Id.*

at 2.  Wang commented that he "would like [Plaintiff] to improve" in this area and that Plaintiff needed to "step up and take the lead to grow Arrow and meet company objectives," for example, by delegating less.  *Id.*  In the last category, "Communication," Wang characterized Plaintiff's work as "satisfactory" and commented that he needed "to open lines of communication with his staff," for example, by holding more departmental meetings.  *Id.* at 2–3.

Although Plaintiff signed the evaluation, he later testified that he disagreed with Wang's comments as to these categories and felt that he was not recognized for the broad scope of work he had been doing up to that point.  Pl.'s Dep., ECF No. 90-4, at 35–41.  Plaintiff agreed, however, with the goals Wang set for him to achieve in the next evaluation period, which included "being a strong leader," having no "compliance issues," growing the business, becoming an "expert in palliative care," and developing a "strong knowledge" of Arrow's technology and operating systems.  ECF No. 96-9 at 4; Pl.'s L. R. 56(a)2 St. ¶ 46.  In addition, Plaintiff agreed with Wang's overall comments that he was "a very dedicated employee," but that he needed "to step up and take this Hospice opportunity to demonstrate that he can lead and grow this business successfully." ECF No. 96-9 at 5; Pl.'s L. R. 56(a)2 St. ¶ 46.

In early June of 2018, Russo, who was approximately thirty-five years old, started working at Arrow full-time.[3]  Pl.'s St. of Suppl. Facts ¶ 10; *see also* Kelly Aff., ECF No. 96-6, ¶ 6.  Around the same time, Wang "assigned" Adam Wilczek, at that time forty-two years old and the Director of Partners' East Windsor Pharmacy,[4] to work at Arrow in addition to his other responsibilities, even though Wilczek was not licensed as a pharmacist in Connecticut.  Pl.'s St. of Suppl. Facts ¶

---

[3] Although Arrow's name had changed to Avantum by this point, coinciding with the effective date of its expanded services, the Court refers to it as Arrow throughout the rest of this ruling for clarity and consistency.

[4] In March or April of 2018, Wang terminated the Director of the East Windsor Pharmacy, Monica Boiselle, at that time thirty-six years old, for poor performance.  Pl.'s L. R. 56(a)2 St. ¶ 53; Wang Dep., ECF No. 90-8, at 7 ("She was ineffective as a leader.").  Soon thereafter, Wang hired Wilczek to replace her.  Defs.' Resp. to Pl.'s St. of Suppl. Facts, ECF No. 99-1, ¶ 8.

10.  Thereafter, Plaintiff represents, Wang communicated only with Wilczek and Russo, and he effectively gave Plaintiff's Director authority and responsibilities to them.  Pl.'s Dep., ECF No. 96-4, at 11.  In addition, Wang ignored concerns Plaintiff raised to him about Wilczek and Russo behaving unprofessionally—specifically, Wilczek behaving "inappropriately with female employees" and Russo "walking out during a shift."  Pl.'s St. of Suppl. Facts ¶ 11; *see also* Pl.'s Dep., ECF No. 96-4, at 9, 11–12.

As the summer of 2018 progressed, Arrow operated well despite the evidently escalating tension between Plaintiff, Wang, Wilczek, and Russo.  In June, there was an incident when a pharmacist at Arrow dispensed the wrong medication and, although Plaintiff addressed the error, he was unable to determine which pharmacist was responsible.  Pl.'s St. of Suppl. Facts ¶ 14.  Despite this error, Arrow's overall error rate between June and September of 2021 was .001, far better than industry average.  *Id.*  Indeed, the Connecticut Board of Pharmacy's inspection of Arrow in July went "very well."  *Id.* ¶ 13; ECF No. 96-30.

C.  <u>Plaintiff's Termination</u>

Nevertheless, by August 9, 2018, Wang made the decision to terminate Plaintiff.  Pl.'s L. R. 56(a)2 St. ¶ 48; Wang Dep., ECF No. 90-8, at 17.  Wang testified that the basis of his decision to terminate Plaintiff was "his ineffectiveness as a leader" and his inability to transition Arrow's services to suit the hospice pharmaceutical market.  Wang Dep., ECF No. 90-8, at 23, 26.  Wang further testified that Plaintiff required significant supervision and was not able to operate independently, struggled to "make decisions" and navigate technology, and delegated many tasks to his staff.  *Id.* at 26.  Plaintiff characterizes this testimony as self-serving and pretextual.  Pl.'s L. R. 56(a)2 St. ¶ 47.

7

Although Wang decided to terminate Plaintiff in early August of 2018, he, Spero, and other senior employees of Partners decided to wait to move forward with the termination until they had secured another PIC with the proper licensure to assume Plaintiff's responsibilities so that Arrow would not experience any interruption in revenue. *Id.* ¶ 48; Wang Dep., ECF No. 90-8, at 21. Wang decided that Russo would replace Plaintiff as the PIC of Arrow after he had obtained the necessary licenses, at which point Wang would terminate Plaintiff. Wang Dep., ECF No. 90-8, at 18. In addition, Wang planned for Wilczek to become the Director of Arrow, and he planned to find a replacement for Wilczek at the East Windsor Pharmacy. *Id.* At Wang's instruction, Wilczek communicated this plan to Russo, who then worked on getting the necessary licenses with instructions not to tell Plaintiff that he was doing so. Russo Dep., ECF No. 96-10, at 16, 19. Wang testified that, between August and November of 2018, he did not reconsider his decision to terminate Plaintiff. Wang Dep., ECF No. 90-8, at 21–22.

Plaintiff's employment was officially terminated on November 27, 2018, when he was sixty-three years old. Pl.'s L. R. 56(a)2 St. ¶¶ 51–52. Wang's termination letter to Plaintiff stated that there were "issues" with Plaintiff's performance, "specifically, as it relates to following through on operational initiatives within the pharmacy." ECF No. 96-33.

Thereafter, as planned by Wang, Plaintiff's responsibilities as the PIC and Director of Arrow were split between Russo, who had the necessary PIC licenses, and Wilczek, who became the Director of Arrow and to whom Russo reported. Pl.'s St. of Suppl. Facts ¶ 20; ECF No. 96-35. Two days after terminating Plaintiff, Wang visited Arrow and communicated to Spero that he was impressed with Wilczek's efforts in effectuating the expansion and with Russo's hard work and great potential. ECF No. 96-34.

Only two weeks later, however, Wang terminated Wilczek "due to misconduct on his part involving another employee." Lopez Dep., ECF No. 96-8, at 29. *See also* Wang Dep., ECF No. 90-8, at 10 (Wang testifying that he disciplined and then terminated Wilczek); Lopez Dep., ECF No. 99-1, at 93 (describing the misconduct). In late December of 2018, Wang hired Michael Gemma, who was sixty-two years old at that time, to fill Wilczek's position, although it is unclear whether Gemma was intended to serve as the Director of the East Windsor Pharmacy, Arrow, or both. Pl.'s L. R. 56(a)2 St. ¶¶ 56–57; Lopez Dep., ECF No. 96-8 at 30 (a human resources employee testifying that Gemma was hired to be the Director of Arrow and to support the East Windsor Pharmacy); Wang Dep., ECF No. 90-8, at 10 (Wang testifying that he replaced Wilczek with Gemma).

### D. Procedural History

In February of 2019, Plaintiff filed an administrative discrimination charge against Arrow, claiming that his employment was terminated due to his age. ECF No. 96-16 at 10. In February of 2020, the Connecticut Commission on Human Rights and Opportunities ("CHRO") released jurisdiction and authorized Plaintiff to sue Defendants for discrimination. Compl., ECF No. 1-1, ¶ 29. Soon thereafter, Plaintiff initiated the present action, claiming that Defendants violated the ADEA and the CFEPA by terminating him due to his age. *Id.* ¶¶ 79–89. Following the close of discovery, Defendants filed the present motion for summary judgment, ECF No. 88. After Defendants filed their reply briefing, Plaintiff filed his related motion to strike, ECF No. 101.

## II.   PLAINTIFF'S MOTION TO STRIKE

Before turning to the merits of Defendants' motion for summary judgment, the Court considers Plaintiff's motion to strike Defendants' filing at ECF No. 99-1. The following additional procedural history is relevant to this motion. Along with their motion for summary judgment,

Defendants filed a statement of undisputed material facts pursuant to Local Rule 56(a)1, ECF No. 90.  Plaintiff submitted an opposition brief, a response to Defendants' fact statement pursuant to Local Rule 56(a)2(i), and a statement of additional material facts pursuant to Local Rule 56(a)2(ii).[5]  ECF Nos. 95–96.  Thereafter, Defendants submitted a reply brief along with a response to Plaintiff's statement of additional material facts.  ECF No. 99-1.  Defendants' response appears like a non-movant's Local Rule 56(a)2(i) statement in response to a movant's Local Rule 56(a)1 statement of material facts.  Specifically, Defendants' response statement consists of reproductions of Plaintiff's additional material facts with Defendants' responses—admitting, denying, or objecting to each fact, with citations to the record—listed below each fact in bold typeface. Defendants' response also attaches the exhibits that support their denials of Plaintiff's statements of fact; many of those exhibits were not originally submitted in support of Defendants' opening brief.  *See generally* ECF No. 99-1 (Exs. 1, 6–14).  Plaintiff contends that Defendants' filing is not authorized by the Local Rules and impermissibly raises new evidence in reply.

The Court agrees with Plaintiff.  As an initial matter, it is well established that a party cannot "attempt to cure deficiencies in its moving papers" by introducing new evidence in its reply when the effect would be to deprive the opposing party of any opportunity to respond.  *Travelers Indem. Co. v. Excalibur Reins. Corp.*, No. 3:11-CV-1209 (CSH), 2013 WL 4012795, at *2 (D. Conn. Aug. 5, 2013).  For that reason, Defendants' attempt to attach new evidence to its reply brief is suspect.  More importantly, Defendants do not identify a provision of the Local Rules that permits a movant to respond to a non-movant's Local Rule 56(a)2(ii) statement of additional

---

[5] Plaintiff titles this statement "Plaintiff's 56(A)3 Statement of Additional Material Facts."  ECF No. 96 at 21.  Local Rule 56(a)3, however, pertains to the citations necessary to support any statement contained in a movant's Local Rule 56(a)1 statement and a non-movant's Local Rule 56(a)2 statement.  Instead, Plaintiff's statement of additional material facts arises pursuant to Local Rule 56(a)2(ii), which directs a non-movant to set forth additional facts that the non-movant contends "establish genuine issues of material fact precluding judgment in favor of the moving party."  Accordingly, the Court refers to this statement as Plaintiff's Statement of Supplemental Facts, as a shorthand reference to Local Rule 56(a)2(ii).

material facts, nor do they identify any other procedural mechanism which permits a filing like their response statement.  That alone warrants some form of relief for Plaintiff.  *See Chapco, Inc. v. Woodway USA, Inc.*, 282 F. Supp. 3d 472, 477 n.2 (D. Conn. 2017) (disregarding a movant's statement of supplemental facts because it was not authorized by the Local Rules).

The specific relief appropriate in this circumstance, however, presents a different question.  The Court denies Plaintiff's request to strike the offending filing.  Federal Rule of Civil Procedure 12(f) permits a district court to strike a "pleading" for various reasons, but Defendants' response statement does not appear to constitute a pleading as contemplated by that Rule.[6]  *See* Fed. R. Civ. P. 7(a) (listing types of acceptable pleadings).  The Court also denies Plaintiff's request to file a sur-reply brief, as the Court is not inclined to further protract the briefing in this case.  *See Chase v. Nodine's Smokehouse, Inc.*, No. 3:18-CV-683 (VLB), 2020 WL 8181655, at *20 (D. Conn. Sept. 29, 2020) ("Granting permission to file a sur reply would protract briefing and could have been avoided by the exercise of careful diligence.").  Instead, the Court simply will not consider Defendants' response statement and supporting evidence.  *See Chapco, Inc.*, 282 F. Supp. 3d at 477 n.2.  Thus, Plaintiff's motion to strike is GRANTED IN PART and DENIED IN PART.

## III.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   Legal Standard

#### 1.   *Federal Rule of Civil Procedure 56*

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  With respect to materiality, a fact is

---

[6] Local Rule 56(a)4 provides: "Motions to strike (a) statements made in a Rule 56(a) statement or (b) the supporting evidence are prohibited."  Because Defendants' response statement does not squarely fall within the scope of Local Rule 56(a), Local Rule 56(a)4 likely does not prohibit Plaintiff's motion to strike in this instance.  That does not establish, however, that a motion to strike may be properly aimed at a filing that is not a pleading.

"material" only if a dispute over it "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). With respect to genuineness, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021) (citation and internal quotation marks omitted).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing there is no genuine issue of material fact in dispute will be satisfied if the movant can point to an absence of evidence to support an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears an initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. A movant, however, "need not prove a negative when it moves for summary judgment on an issue that the [non-movant] must prove at trial. It need only point to an absence of proof on [the non-movant's] part, and, at that point, [the non-movant] must 'designate specific facts showing that there is a genuine issue for trial.'" *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (quoting *Celotex Corp.*, 477 U.S. at 324). The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. If the non-movant fails "to make a sufficient showing on an essential element of [its] case with

respect to which [it has] the burden of proof," then the movant will be entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

### 2. The ADEA and the McDonnell Douglas *Framework*

The ADEA prohibits an employer from discharging or otherwise discriminating against an employee who is at least forty years of age because of the employee's age.  29 U.S.C. §§ 623(a)(1), 631(a).  A court analyzes a plaintiff's claim of discriminatory treatment under the ADEA pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as modified by the U.S. Supreme Court's subsequent decision in *Gross v. FBL Financial Services*, 557 U.S. 167 (2009).  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (noting that the *McDonnell Douglas* burden-shifting framework applies to ADEA claims, notwithstanding the Supreme Court's clarification in *Gross*).  Although the *McDonnell Douglas* framework effectively shifts the "intermediate evidentiary burdens" between the plaintiff and defendant, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (cleaned up; quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1993)).

Under the *McDonnell Douglas* burden-shifting framework, "the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination."  *Gorzynski*, 596 F.3d at 106 (italics added) (citing *McDonnell Douglas*, 411 U.S. at 802).  "In order to establish a *prima facie* case of age discrimination, [a plaintiff] must show (1) that [he] was within the protected age group, (2) that [he] was qualified for the position, (3) that [he] experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Id.* at 107 (italics added) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000),

*cert. denied sub nom. Mystic Transp., Inc. v. Carlton*, 530 U.S. 1261 (2000)).  The plaintiff's burden to establish a *prima facie* case is "not a heavy one."  *Id.*  Once the plaintiff establishes his *prima facie* case, "the burden shifts to the defendant to articulate 'some legitimate, nondiscriminatory reason' for its action."  *Id.* at 106 (quoting *McDonnell Douglas*, 411 U.S. at 802).

If the defendant articulates a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to "show that the employer's determination was in fact the result of discrimination."  *Id.*  Specifically, the plaintiff will ultimately prevail on his ADEA claim only if he proves "that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor."  *Id.* (quoting *Gross*, 557 U.S. at 176).  But-for causation does not require proof that the improper purpose "was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of" the improper motive. *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  Relevant to this inquiry, the plaintiff may satisfy his final *McDonnell Douglas* burden by establishing that the defendant's proffered reason for its action was a pretext for age discrimination.  *See Reeves*, 530 U.S. at 143 ("[T]he plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence" and, thus, "a pretext for discrimination." (citations and internal quotation marks omitted)); *Carlton*, 202 F.3d at 136 ("But [the plaintiff] must demonstrate . . . that the [proffered reasons] are actually a pretext and that the real reason for his discharge was his age.").

"Ordinarily, [a] plaintiff's evidence establishing a *prima facie* case and [the] defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after trial."  *Carlton*, 202 F.3d at 135.  Thus, in a case where the plaintiff

establishes his *prima facie* case and the defendant proffers a legitimate, nondiscriminatory reason for its action, summary judgment "is appropriate . . . only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Id.*; *accord Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 392 (2d Cir. 2020) (holding, in a case alleging national origin and racial discrimination, that "the question of what motivated an employer's desire to fire a worker is a quintessential jury function").

### B.   Plaintiff's *Prima Facie* Case

For the purpose of summary judgment, the Court assumes with little further analysis that Plaintiff has established a *prima facie* case of age discrimination, given that Defendants devote no argument to it in their brief and did not contest it at oral argument. First, Plaintiff was "within the protected age group," *see Gorzynski*, 596 F.3d at 107, given that he was between fifty-nine and sixty-three years old during the relevant events. Second, Plaintiff was a pharmacist licensed to dispense medication in Connecticut with several years of experience as the PIC of Arrow, which strongly suggests that he was qualified for the position. *See id.* Third, he experienced an adverse employment action when his employment was terminated. *See id.* Finally, Defendants do not appear to dispute that Plaintiff was terminated under circumstances giving rise to an inference of discrimination, *see id.*, at least as judged by the minimal requirements of a *prima facie* case. *See Carlton*, 202 F.3d at 134. In any event, following Plaintiff's termination, Wilczek and Russo, who were substantially younger than Plaintiff, took over Plaintiff's responsibilities. The substantial age difference between Plaintiff and Wilczek and Russo can support an inference of age discrimination. *See Edwards v. William Raveis Real Est., Inc.*, No. 3:08-cv-1907 (JCH), 2010 WL 3829060, at *6 (D. Conn. Sept. 22, 2010). Accordingly, the Court assumes that Plaintiff has

established his *prima facie* case, and the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for terminating his employment.

### C.  Defendants' Legitimate, Nondiscriminatory Reason

A defendant's burden to articulate a legitimate, nondiscriminatory reason for terminating the plaintiff is "one of production, not persuasion." *Reeves*, 530 U.S. at 142.  In satisfying this burden of production, a defendant must "frame[] the factual issue with sufficient clarity to afford the [plaintiff] a full and fair opportunity to demonstrate pretext." *Meiri v. Dacon*, 759 F.2d 989, 996–97 (2d Cir. 1985), *cert. denied*, 474 U.S. 829 (1985).  Accordingly, the defendant's "explanation of its reasons must be clear and specific." *Id.* at 997; *accord Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e).

Here, Defendants contend that Wang terminated Plaintiff because "his performance deficiencies . . . rendered him unsuitable to spearhead the major expansion from Arrow to Avantum or, ultimately, run its transitioned operations." ECF No. 89 at 11–12.  Although performance deficiencies are the type of legitimate, nondiscriminatory reasons that typically satisfy this step of the *McDonnell Douglas* test, Defendants' articulation of Plaintiff's performance deficiencies in the present motion is quite generalized and conclusory.  Plaintiff concedes, however, that Defendants have "met their burden of stating a non-discriminatory reason for the termination." ECF No. 95 at 24.  The Court therefore proceeds to the third step of the *McDonnell Douglas* framework.

### D.  Evidence of Pretext and Age as a But-For Cause

The Court finds genuine disputes of material fact that could permit a reasonable factfinder to conclude Plaintiff's age was a but-for cause of Defendants' decision to terminate him. *See*

*Gorzynski*, 596 F.3d at 107.  "The condition that a plaintiff's age must be the 'but for' cause of the adverse employment action is not equivalent to a requirement that age was the employer's *only* consideration, but rather that the adverse employment action *would not have occurred without it*."  *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (cleaned up; citations and internal quotation marks omitted; emphasis in original).

As noted above, Plaintiff may show that his age was a but-for cause of Defendants' decision to terminate him by pointing to evidence that Defendants' proffered reason for terminating him—poor performance in leading Arrow's expansion—was a pretext for age discrimination.  *See Reeves*, 530 U.S. at 143.  This burden is composed of two requirements Plaintiffs must meet:  first, "that there was a pretext," and, second, "that the pretext was intended to mask an illegal or discriminatory motive."  *Reichert v. Perdue*, 786 F. App'x 294, 297 (2d Cir. 2019) (summary order).  In other words, to defeat Defendants' motion for summary judgment, Plaintiff must raise a genuine dispute of material fact as to whether (1) Defendants' asserted reason for terminating him is "false or unworthy of belief," and (2) "more likely than not" Plaintiff's age was the but-for reason for his termination.  *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 92 (2d Cir. 1996) (citation and internal quotation marks omitted).  The Court addresses those two requirements in turn.

### 1.  Pretext

The Court finds genuine disputes of material fact as to whether Defendants' asserted reason for terminating Plaintiff is pretextual—in other words, false, unworthy of belief, or implausible.  To be clear, a discrimination claim does not directly turn on the truth of an employer's asserted reason for terminating the employee; rather, a discrimination claim turns on "what *motivated* the employer."  *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (citation and

internal quotation marks omitted; emphasis in original).  Relevant to pretext, however, "[p]roof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."  *Reeves*, 530 U.S. at 147.  In other words, the falsity of a proffered reason can demonstrate that the employer's asserted reason was pretextual, and that the employer was actually motivated by discriminatory animus, if the circumstances demonstrate either that the employer knew the proffered reason was false or that the reason was so unworthy of credence that the employer could not have believed its truth in good faith.  *See id.* (explaining that, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation" that the employer's "dishonesty" about those facts is "affirmative evidence of guilt"); *Kwan*, 737 F.3d at 846 ("A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.  From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." (citations omitted)).

As noted above, Defendants contend that Wang terminated Plaintiff because "his performance deficiencies . . . rendered him unsuitable to spearhead the major expansion from Arrow to Avantum or, ultimately, run its transitioned operations."  ECF No. 89 at 11–12.  This stated reason has two factual components:  first, that Plaintiff was expected to "spearhead" Arrow's expansion; and second, that Plaintiff's performance in that role was deficient.  The Court finds genuine disputes of fact material to whether both components of this stated reason are pretextual, *i.e.*, false or unworthy of belief.

As an initial matter, there is a genuine dispute of fact as to whether Plaintiff was indeed expected to "spearhead" Arrow's expansion into the hospice pharmaceutical market.  Plaintiff

testified that Spero told him, "this is all you, you're going to run this thing, you're going to develop it, you're going to build it," Pl.'s Dep., ECF No. 90-4, at 20, and Defendants cite this testimony in support of their contention that "Spero and Wang asked Plaintiff to take the lead in spearheading the major expansion," Defs.' L. R. 56(a)1 St. ¶ 26 (citing Plaintiff's deposition). Plaintiff, however, denies that he was ever asked to lead the expansion, Pl.'s L. R. 56(a)2 St. ¶ 27, instead characterizing his involvement as "working on the transition team," Pl.'s St. of Suppl. Facts ¶ 5. Plaintiff also points to Wang's deposition testimony from which a reasonable jury could infer that Wang was expected to lead Arrow's expansion, which undermines Defendants' argument that he expected Plaintiff to take on such a role. *See* Wang Dep., ECF No. 96-2, at 91 (Wang explaining that he did not consider hiring another individual as the Director of Arrow because the expansion was "a big task" and it was ultimately decided that Wang "would just need to do it by [himself]"); *see also* Spero Dep., ECF No. 96-3, at 5 (Spero testifying that Wang "really helped us build and develop Avantum," and that Arrow's expansion was Wang's project even while his regional responsibilities shifted). The contradictions in the record, within Plaintiff's own testimony and between his testimony and Wang's testimony, raise a genuine dispute of fact over whether Plaintiff was indeed tasked with leading Arrow's expansion. That dispute bears directly on whether Defendants' reason for terminating Plaintiff—poor performance in leading Arrow's expansion— was pretextual.

Even if it was beyond dispute that Plaintiff was indeed tasked with leading Arrow's expansion, however, there are various genuine disputes of fact regarding whether Wang plausibly believed that Plaintiff's performance was in fact deficient.

First, there are genuine disputes of fact as to whether Wang's alleged reliance on Plaintiff's poor performance and leadership when terminating him is pretextual. Defendants generally

contend that Plaintiff exhibited poor leadership, frequently delegated tasks to others, and generally struggled with "fairly basic operational and workflow" tasks. ECF No. 96-16 at 5. Wang testified that Plaintiff could not "do the basics" of the job, could not "transition from retail to long-term care," could not "make decisions," "lacked confidence," did not "understand technology," delegated "everything" to his staff rather than learning how to do tasks himself, lacked "communication or presentation skills," and was not "comfortable" working independently. Wang Dep., ECF No. 90-6, at 25–26. But there is a genuine dispute regarding whether Plaintiff's performance was indeed deficient, given that the record does not contain any negative evaluation of Plaintiff's performance and the evidence that Plaintiff's 2018 performance evaluation was at least satisfactory.[7]

Several courts in this circuit have found evidence of pretext where the employee had never received a poor performance evaluation. *Carlton*, 202 F.3d at 137 (reasoning that the plaintiff "never received a negative written performance evaluation or formal warning, nor is there any writing whatsoever criticizing his job performance, indicating that as a reason for his firing poor job performance was an afterthought"); *Almodovar v. Cross Fin. Corp.*, No. 3:20-CV-1179 (JCH), 2022 WL 1810132, at *12 (D. Conn. June 2, 2022) (noting that the plaintiff "was not even told that she was not performing adequately until the day she was terminated"); *Rodrigues v. Conn. Container Corp.*, No. 3:20-CV-294 (JCH), 2022 WL 844610, at *7 (D. Conn. Mar. 22, 2022) ("It is undisputed that [the plaintiff] never received a poor performance review over the course of his near-thirty-year employment."). Here, the record contains two of Plaintiff's performance evaluations: a 2017 evaluation reflecting that his performance was "good" in every category, ECF

---

[7] Related to Plaintiff's alleged general incompetence, Defendants contend that Wang found Arrow's physical premises to be in "total disarray," with disorganized operations and boxes strewn around. ECF No. 96-16 at 5. Plaintiff generally denies that Arrow was dirty or disorganized, and he contends that furniture and fixtures were outdated because Partners had been unwilling to provide Arrow with funds to update them. Pl.'s L. R. 56(a)2 St. ¶ 40.

No. 96-25, and a 2018 evaluation that Defendants characterize as "mixed," Mem. in Supp. of Mot. for Summ. J., ECF No. 89, at 7.

A reasonable jury considering the 2018 evaluation could find that it was generally satisfactory and did not alert Plaintiff to the performance deficiencies cited by Wang. Wang gave Plaintiff an overall performance score of three out of five, which signified that he met performance expectations. ECF No. 96-9 at 3. In three categories—functional and technical knowledge, job performance and quality of work, and communication—Wang rated Plaintiff a score of three out of five, which meant that his performance was consistently "satisfactory" and required "normal supervision." *Id.* at 1–3. In one category, leadership, Wang gave Plaintiff a score of two out of five, which meant that his performance was "fair," occasionally did not meet expectations, and required "more than normal supervision." *Id.* at 1–2. In another category, customer focus, Wang gave Plaintiff a score of four out of five, which meant that his performance was "good" and met or occasionally exceeded expectations. *Id.*

To be sure, a reasonable jury could conclude that Wang's general dissatisfaction with Plaintiff's performance was not pretextual given that the category in which Plaintiff scored the lowest, leadership, corresponds with the reasons provided by Wang for terminating Plaintiff. In considering Defendants' motion for summary judgment, however, the Court is required to draw all reasonable inferences in Plaintiff's favor, and a reasonable jury could find the 2018 evaluation supportive of either Plaintiff's or Defendants' view of the facts. Because the 2018 evaluation was generally satisfactory, because it was completed in close temporal proximity to Wang deciding to terminate Plaintiff, and because the record contains no other evidence that Plaintiff was told his performance was generally deficient, a reasonable jury could find that Defendants' stated reason for terminating Plaintiff for generally poor performance was pretextual. *Choate v. Transp.*

*Logistics Corp.*, 234 F. Supp. 2d 125, 132 (D. Conn. 2002) (reasoning that there was sufficient evidence of pretext because, "[j]ust four months prior to termination, [the] plaintiff had technically achieved an overall score of 61, a score classified just within the 'meets standards' range").[8]

### 2. Age as But-For Cause

As noted above, it is not enough for Plaintiff to demonstrate the proffered reason for the adverse employment action was generally pretextual. Rather, Plaintiff must also raise a genuine dispute of material fact as to whether the proffered reason was a pretext *for age discrimination*, rendering Plaintiff's age the but-for cause of Wang's decision to terminate him. *See Chertkova*, 92 F.3d at 92; *Reichert*, 786 F. App'x at 297. Here, Plaintiff's evidence of pretext, standing alone, does not demonstrate that the reason was pretextual *for age discrimination*. The record, however, contains many other disputed facts that are material to the question of whether age was ultimately a but-for cause of Wang's decision to terminate Plaintiff. Specifically, the record contains evidence that Wang generally hired younger employees, that he afforded more favorable disciplinary treatment to younger employees, that he made discriminatory remarks, and that his actions after terminating Plaintiff evince discriminatory animus. Those disputed facts, combined with the disputed facts relevant to whether Defendants' stated reason for terminating Plaintiff is pretextual, are together enough for Plaintiff to survive the summary judgment stage under the ADEA.

First, the Court finds genuine disputes of fact as to whether Defendants demonstrated a pattern of hiring younger employees, which would constitute circumstantial evidence of a

---

[8] Defendants make passing reference to Arrow, under Plaintiff's supervision, dispensing medication in a state in which it was not licensed. Although Defendants cited this instance as well as several licensure and compliance issues when opposing Plaintiff's CHRO complaint, *see* ECF No. 96-16 at 5–7, Defendants' briefing on the present motion does not argue that any of those issues were the basis for Plaintiff's termination. Accordingly, the Court need not address these issues further.

discriminatory motive underlying Wang's decision to terminate Plaintiff.  As a general matter, and as discussed in more detail below, a plaintiff may present evidence of discrimination by showing that "similarly situated employees of a different [class] were treated more favorably."  *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (Sotomayor, J.).  Plaintiff contends that, during the relevant time frame, Wang hired, or offered PIC or Director positions to, seven individuals who were younger than 43 years old.  Pl.'s St. of Suppl. Facts ¶ 33.  At the same time, Wang hired only three individuals—one as a PIC, one as a Director, and one as a Regional Manager, a promotion from Director—who were 43, 62, and 51 years old, respectively.  *Id.* Plaintiff argues that a reasonable jury could perceive this pattern as evidence that Wang favored younger employees and thus as circumstantial evidence of discrimination against Plaintiff.  In response, Defendants contend that Wang's hiring of Vermiglio and Gemma, who were close to Plaintiff's age, defeats a finding of age discrimination.  But Plaintiff has produced evidence that, if credited by a reasonable jury, demonstrates that Wang initially resisted hiring Vermiglio and agreed to do so only after he had hired Russo, who was much younger, to work at Arrow as well. Pl.'s Aff., ECF No. 96-1, ¶¶ 21–22; Pl.'s Dep., ECF No. 96-4, at 9; Pl.'s L. R. 56(a)2 St. ¶ 38. Additionally, while the hiring of Gemma (at what Defendants contend is a salary higher than market value) is certainly probative of the question of whether Wang terminated Plaintiff due to his age, it is not enough to put beyond reasonable dispute that Plaintiff was subjected to age discrimination.  Notably, Gemma was hired only after Wilczek, a younger employee that Wang had initially chosen to perform some of Plaintiff's duties, was terminated.  The parties simply present conflicting circumstantial evidence regarding whether Wang preferred to hire younger employees, and the jury must assess that evidence to decide Wang's intent.

Second, the Court finds genuine disputes of fact as to whether Wang afforded more favorable disciplinary procedures to younger employees than he afforded to Plaintiff before terminating him.  As mentioned above, "[a] showing that similarly situated employees falling outside the plaintiff's protected class received more favorable treatment [than the plaintiff] can . . . serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination." *Bjorklund v. Golub Corp.*, No. 3:18-CV-1271 (MPS), 2020 WL 902602, at *5 (D. Conn. Feb. 25, 2020) (quoting *Adamczyk v. N.Y. Dep't of Corr. Servs.*, 474 F. App'x 23, 27 (2d Cir. 2012) (summary order)), *aff'd*, 832 F. App'x 97 (2d Cir. 2021) (summary order).  Relatedly, courts have found evidence that an employer's proffered reason was a pretext for age discrimination when the employer follows certain procedures to terminate non-protected class employees but does not follow those procedures to terminate protected class employees.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 453 (2d Cir. 1999) (affirming that "[d]epartures from procedural regularity . . . can raise a question as to the good faith of" the employer" (citation and internal quotation marks omitted)); *Carlton*, 202 F.3d at 137 (finding "evidence of inconsistency in [the] defendant's handling of supposedly underperforming employees"); *Choate*, 234 F. Supp. 2d at 132 (noting that, "although [the defendant] had no formal written disciplinary procedure during the period of [the plaintiff's] employment, its informal policy" called for a series of informal warnings before termination, which were not given before the plaintiff was terminated).  A plaintiff generally must show that he was "similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]," meaning, for example, that he was "subject to the same workplace standards" and that "the conduct for which the employer imposed discipline was of comparable seriousness." *Bjorklund*, 2020 WL 902602, at *5 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Here, the record contains genuine disputes of fact regarding whether Wang afforded more favorable disciplinary procedures to Monica Boiselle, the thirty-six-year-old former Director of the East Windsor Pharmacy, before terminating her than he afforded to Plaintiff before terminating him. As an initial matter, the record supports a reasonable inference that Plaintiff and Boiselle were similarly situated except for their ages, given that they were both Directors of their respective pharmacies and therefore subject to similar workplace standards. Moreover, Wang testified that Boiselle demonstrated leadership deficiencies similar to those allegedly exhibited by Plaintiff, and that Wang tried to "coach" her to improve those deficiencies. Wang Dep., ECF No. 90-8, at 7–9; *see also* ECF No. 96-13 (Wang's termination letter to Boiselle referencing the coaching and feedback he had provided). This evidence is consistent with the testimony of a human resources employee that Partners generally had an "expectation" that an employee experiencing performance issues would "be made aware of [the] performance issues" prior to termination. Lopez Dep., ECF No. 96-8, at 3.

Based on this evidence, a reasonable jury could find a material difference between the pre-termination procedures afforded to Plaintiff and those afforded to Boiselle, a much younger employee.[9] Specifically, the jury could find that Wang's provision of "coaching" and feedback to Boiselle before she was terminated differs from his pre-termination treatment of Plaintiff. Defendants' contention that the 2018 performance review constituted notification to Plaintiff that his performance was deficient does not necessarily preclude the conclusion that Wang still offered more favorable treatment to Boiselle. Thus, there is a genuine dispute of fact as to whether Wang

---

[9] Relatedly, a reasonable jury could find a material difference in how Wang responded to complaints of employee performance deficiencies that evinces discriminatory animus. By Defendants' own account, Russo and Wilczek complained about Plaintiff to Wang, and Wang allegedly terminated Plaintiff as a result. ECF No. 96-16 at 8. Plaintiff, however, represents that he raised concerns about Wilczek's and Russo's performance to Wang, but Wang ignored those complaints. Pl.'s St. of Suppl. Facts ¶ 11. *See Gorzynski*, 596 F.3d at 108 (explaining that "the fact that other younger employees were not disciplined for violating numerous policies is . . . evidence that the reasons given by [the defendant] for firing [the plaintiff] were pretextual").

afforded more favorable pre-termination disciplinary procedures to a similarly situated younger employee than he afforded to Plaintiff.  *E.g.*, *Choate*, 234 F. Supp. 2d at 132; *Bjorklund*, 2020 WL 902602, at *5.

Third, evidence of discriminatory remarks made by Wang raises genuine disputes of fact as to whether Wang was motivated by discriminatory animus when he terminated Plaintiff. Remarks by a decisionmaker may be probative of the discriminatory nature of a termination decision under certain circumstances.  *See Chertkova*, 92 F.3d at 91.  Isolated, unrelated, or otherwise "stray" remarks are generally not sufficient to demonstrate a discriminatory motive. *Naumovski v. Norris*, 934 F.3d 200, 216 (2d Cir. 2019).  Discriminatory remarks, however, "may reflect discriminatory intent if there is a nexus between the alleged discriminatory remarks and the adverse employment action."  *Bjorklund*, 2020 WL 902602, at *7 (quoting *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288, 295 (S.D.N.Y. 2005)).  *See also Naumovski*, 934 F.3d at 216 n.47 (explaining that remarks are not "stray" where they are sufficiently severe and therefore probative of discriminatory intent).  "In determining whether a remark is probative of discrimination, district courts in this circuit generally consider four factors: (1) who made the remark (*i.e.*, a decision maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)."  *Saliga v. Chemtura Corp.*, No. 12-CV-832 (VAB), 2015 WL 5822589, at *8 (D. Conn. Oct. 1, 2015) (quoting *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 150 (2d Cir. 2010)).

Here, the record contains evidence of three categories of remarks Wang allegedly made. First, Wang allegedly directly disparaged Plaintiff's performance due to his age.  Specifically, in

response to Plaintiff's assurance that he could work the long hours needed to effectuate Arrow's expansion, Wang responded that Plaintiff was "not a young person anymore," so they would "have to get other people to get on board with this."  Pl.'s Dep., ECF No. 90-4, at 27.  Second, Wang purportedly described the particular qualities needed in the new pharmacists in language that a reasonable jury could find euphemistic for age.  In particular, Plaintiff testified, over defense counsel's objection, that Wang explained they needed to "hire young energetic pharmacists that can do the long hours to get things done."  Pl.'s Dep., ECF No. 96-4, at 24 (quoting Compl. ¶ 60).  Third, Wang repeatedly praised Russo with language pertaining to his youth.  For example, Wang described Russo, who was thirty-four years old, as a "a very bright kid" and "an absolute workhorse."  ECF No. 96-17 at 2; ECF No. 96-34.

With respect to all three categories of remarks allegedly made by Wang, the four-factor test employed in this circuit demonstrates the probative value of the remarks as evincing discriminatory motive.  With respect to the first factor, all the relevant remarks were made by Wang, the decisionmaker.[10]

The second factor, the timing of the remarks, presents a closer question.  Courts in this circuit generally hold that "a three-month lapse between the alleged discriminatory remark and the adverse employment action is too long a gap to find the remark probative of discrimination." *Jacobs v. N.Y.C. Dep't of Educ.*, No. 11-CV-5058 (MKB), 2018 WL 10125148, at *9 (E.D.N.Y. Mar. 31, 2018) (collecting cases).  The first remark, that Plaintiff was "not a young person anymore," was made in early 2018, several months before Wang decided to terminate Plaintiff. There is, however, "no bright line rule regarding the length of time that renders an allegedly

---

[10] Plaintiff also allegedly overheard Wilczek tell Wang that Plaintiff was "too old and fat" to do the job, a comment to which Wang did not respond.  Pl.'s St. of Suppl. Facts ¶ 11.  Although Plaintiff asks the Court to interpret Wang's silence as agreement with Wilczek's comment, the Court need not do so given the probative value of the other remarks discussed above.

discriminatory remark too attenuated to constitute evidence of discrimination." *Id.* Although the remark was made several months before Wang decided to terminate Plaintiff, it was made around the same time Wang first received a negative impression of Plaintiff's work performance, and a reasonable jury could find that timing more than coincidental and therefore probative of discriminatory intent. Moreover, Wang made the remarks regarding the youthful qualities needed in the new pharmacists and praising Russo as a hardworking "kid" during the spring and summer of 2018, much closer to Wang's decision to terminate Plaintiff later that summer. Indeed, those remarks continued through the day following Plaintiff's termination in the fall.

The third factor, the content of the remarks, also generally suggests discriminatory intent. Wang's first remark directly linked Plaintiff's inability to complete the extra work associated with the expansion to his older age, which is highly probative of discriminatory intent. Wang's remarks regarding the youthful qualities needed in the new pharmacists linked optimal employee performance to youth, which is at least somewhat probative of discriminatory intent. Finally, Wang's remarks praising Russo as a hardworking "kid" are also probative of discriminatory intent, as a reasonable jury could interpret them as evidence that Wang believed younger people are more hardworking than older people, and thus that Wang terminated Plaintiff because of his age. *See Tremalio v. Demand Shoes, LLC*, No. 3:12-CV-00357 (VLB), 2013 WL 5445258, at *6, *10 (D. Conn. Sept. 30, 2013) (finding discriminatory remarks, such as the decisionmaker's preference for "a young sales force," indicative of the decisionmaker's discriminatory state of mind and, along with other evidence, probative of discriminatory intent).

The fourth factor, the context of the remarks, strongly suggests discriminatory intent. Wang's remark to Plaintiff that he was "not a young person anymore" was made in response to Plaintiff's assurance that he could work as hard as the expansion required of him. Given that Wang

later purportedly terminated Plaintiff for not working hard enough to effectuate the expansion, the remark suggests that Wang essentially expected Plaintiff to perform inadequately due to his age. Thus, this comment is directly related to the issues that purportedly led to Plaintiff's termination, which is an important distinction from cases finding discriminatory remarks not probative of discriminatory intent. *See Maynard v. Stonington Cmty. Ctr.*, No. 3:15-CV-483 (RNC), 2018 WL 1633709, at *6 (D. Conn. Mar. 31, 2018). Wang's remarks associating Russo's high performance with his young age are also highly probative of Wang's potentially discriminatory motivation in terminating Plaintiff given that, as discussed more below, Russo was intended to, and eventually did, take over Plaintiff's responsibilities as the PIC of Arrow.

Finally, Plaintiff has presented evidence that he was replaced by younger employees, which, if credited by a jury, would be probative of whether Wang acted with discriminatory intent when he terminated Plaintiff. Evidence that an employer replaced a terminated employee with an individual outside the employee's protected class constitutes evidence of discrimination. *Littlejohn v. City of New York*, 795 F.3d 297, 312–13 (2d Cir. 2015) (citing *Carlton*, 202 F.3d at 135). Here, the record demonstrates that, following Plaintiff's termination, his responsibilities as the PIC and Director of Arrow were ultimately assigned to Russo.[11]  *See* Pl.'s St. of Suppl. Facts

---

[11] Although the record is not perfectly clear on this point, it appears that Plaintiff's responsibilities were initially divided between Russo, who became the PIC of Arrow, and Wilczek, who became the Director of Arrow in addition to his responsibilities as the Director of the East Windsor Pharmacy. Wilczek was forty-two years old, within the protected class, but the twenty-year age difference between him and Plaintiff renders Wang's assignment of Plaintiff's responsibilities to him somewhat probative of discriminatory intent. Following Wilczek's termination, his responsibilities as the Director of the East Windsor Pharmacy appear to have been allocated to Gemma, while his responsibilities as the Director of Arrow appear to have been allocated to Russo, effectively making Russo Plaintiff's replacement in full. *See* Pl.'s St. of Suppl. Facts ¶ 20. To the extent Defendants contend that Gemma assumed some of Plaintiff's responsibilities with respect to Arrow, the record presents disputed questions of fact with respect to Gemma's role. *Compare* Lopez Dep., ECF No. 96-8 at 30 (a human resources employee testifying that Gemma was hired to be the Director of Arrow and to support the East Windsor Pharmacy), *with* Wang Dep., ECF No. 90-8, at 10 (Wang testifying that he replaced Wilczek with Gemma).

¶ 20.  Russo, at thirty-five years old, was outside the protected class, thus rendering Wang's assignment of Plaintiff's responsibilities to him strongly probative of discriminatory intent.

### 3.  Same Actor Inference

In addition to their other arguments discussed above, Defendants contend that they are entitled to the "same actor inference," and that such an inference would defeat any possible finding of discrimination.  ECF No. 89 at 16.  "When the same actor hires a person already within the protected class, and then later fires that same person, 'it is difficult to impute to [the actor] an invidious motivation that would be inconsistent with the decision to hire.'"  *Carlton*, 202 F.3d at 137 (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)).  In such circumstances, the "same actor inference" applies, and it is "a highly relevant factor in adjudicating a motion for summary judgment on an ADEA claim."  *Choate*, 234 F. Supp. 2d at 130 (quoting *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000)).  "The same actor inference applies with greatest force where the act of hiring and firing are not significantly separated in time."  *Id.  See also Grady*, 130 F.3d at 560 ("This is especially so when the firing has occurred only a short time after the hiring."); *Schnabel*, 232 F.3d at 91 (finding the same actor inference weighed in the defendants' favor where the plaintiff was fired by the same man who had hired him three years earlier).  "However, the inference is less compelling when a significant period of time elapses between the hiring and firing," such as three or more years.  *Carlton*, 202 F.3d at 138 (finding the same actor inference "significant weaken[ed]," and therefore insufficient to support summary judgment, where seven years elapsed between the plaintiff's hiring and firing); *Tremalio*, 2013 WL 5445258, at *10 n.9 (noting that courts in the Southern District of New York limit the same actor inference to two years, whereas courts in the District of Connecticut typically limited the inference to three years in accordance with *Schnabel*).

Although it is undisputed that Wang terminated Plaintiff in November of 2018, when Plaintiff was sixty-three years old, there are genuine disputes of fact as to who hired Plaintiff for the PIC and Director roles and, relatedly, which individual hiring decision would trigger the period of time relevant to measuring the persuasive weight of the same actor inference. The parties do not dispute that Plaintiff was first hired as the PIC of Arrow in 2012, before it was acquired by Partners. Because Wang could not have been involved in the decision to hire Plaintiff at that time, the same actor inference does not apply relative to that decision. The record also demonstrates that Plaintiff was "hired" as the PIC and Director when Partners bought the pharmacy in 2014, but neither Spero nor Wang were part of the 2014 decision, so the same actor inference does not apply relative to that decision.

The Court is unpersuaded by Defendants' contention that the same actor inference is determinative here because Spero and Wang offered Plaintiff the opportunity to take the lead on the expansion in 2017, when he was sixty-two years old, only one year before he was terminated. This contention is flawed for at least three reasons. First, as noted above, there are genuine disputes of fact as to whether Plaintiff was indeed expected to lead the expansion. Second, even if Plaintiff was expected to lead the expansion, noticeably absent from the record is any indication that this expectation accompanied a *promotion*. Although Defendants provide cases applying the same actor inference to promotions, *see Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 143 (S.D.N.Y. 2021) (applying the same actor inference where the employer promoted and then terminated the employee within a short time span), Defendants cite no case, and the Court has not found one, in which the same actor inference applies to a mere employment opportunity or project. *See Collins v. Conn. Job Corps*, 684 F. Supp. 2d 232, 251 (D. Conn. 2010) (expressing skepticism that the same actor inference is "broadly applicable" beyond hiring decisions).

Finally, the same actor inference "is permissive, not mandatory, and even if the same individuals made both decisions, the [c]ourt would not be compelled to give [the defendant] the benefit of the inference at [the summary-judgment] stage of the litigation." *Id.* (citation and internal quotation marks omitted) (second and third alterations in original). The same actor inference is "just that, an inference." *Karim-Seidou v. Hosp. of St. Raphael*, No. 3:09 CV 51, 2012 WL 6628886, at *7 (D. Conn. Dec. 19, 2012). Here, Defendants invoke the same actor inference without acknowledging its limited applicability and without explaining why it is a persuasive consideration in light of the facts of this case. Moreover, even if the same actor inference applied, it would not be a sufficient basis to grant summary judgment for Defendants in light of the numerous genuine disputes of material fact, discussed above, from which a reasonable jury could find that Defendants' proffered reason for terminating Plaintiff was a pretext for age discrimination.

### 4. *In Sum*

Although the Court has sifted through the record and considered each piece of evidence individually, the Second Circuit has instructed district courts to "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie*, 243 F.3d at 102; *see also Reeves*, 530 U.S. at 153 ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."). Here, the Court concludes that a reasonable jury assessing the evidence discussed above could find that Defendants' proffered reasons for Plaintiff's termination were pretexts for age discrimination and that, but for Wang's discrimination on the basis of Plaintiff's age, he would not have been terminated. Importantly, there is evidence from which a reasonable jury could conclude that

Plaintiff was not actually expected to lead the expansion of the pharmacy; that nearly all of the performance deficiencies identified by Defendants were false, unworthy of belief, or implausible; and that Wang's hiring pattern, disciplinary procedures, discriminatory remarks, and decision to replace Plaintiff with a much younger employee all evince discriminatory intent.

Numerous courts, from this district to the U.S. Supreme Court, have found "multiple pieces of strong circumstantial evidence upon which a jury could infer discrimination" sufficient to defeat a motion for summary judgment. *Almodovar*, 2022 WL 1810132, at *12; *see also Reeves*, 530 U.S. at 147. Moreover, the circumstantial evidence Plaintiff has presented is especially persuasive here given that Defendants have not supplied "abundant and uncontroverted independent evidence that no discrimination . . . occurred." *Reeves*, 530 U.S. at 148. Of course, a reasonable jury could, after hearing the evidence, find that Wang terminated Plaintiff for legitimate, non-discriminatory performance reasons. In light of the numerous genuine and material factual disputes identified above, however, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's ADEA claim.

### E. The CFEPA

Like the ADEA, the CFEPA prohibits an employer from discriminating against an individual because of the individual's age. Conn. Gen. Stat. § 46a-60(b)(1). A court analyzes a plaintiff's claim of discriminatory treatment under the CFEPA pursuant to the same *McDonnell Douglas* burden-shifting framework that applies to ADEA claims. *Asante-Addae v. Sodexo, Inc.*, No. 3:13-CV-00489 VLB, 2015 WL 1471927, at *23 (D. Conn. Mar. 31, 2015), *aff'd*, 631 F. App'x 68 (2d Cir. 2016) (summary order); *see also Tremalio*, 2013 WL 5445258, at *20 ("CFEPA claims for age discrimination have traditionally proceeded under the same analysis as ADEA claims."). Accordingly, as with Plaintiff's ADEA claim, the Court notes that Plaintiff has

established a *prima facie* case of discrimination with respect to his CFEPA claim, which Defendants do not meaningfully contest.  Moreover, Plaintiff has conceded that Defendants have identified a legitimate, nondiscriminatory reason for terminating him related to his poor performance in effectuating Arrow's expansion for the purpose of his CFEPA claim, although the Court again notes that this reason is rather vague.

The CFEPA and the ADEA only differ with respect to standard applicable to the final step of the *McDonnell Douglas* burden-shifting framework.  As explained above, the ADEA requires a plaintiff to show that age was a but-for cause of the adverse employment action. *Gorzynski*, 596 F.3d at 106.  To rebut an employer's proffered non-discriminatory explanation under the CFEPA, however, "a plaintiff need only show that [his] age was a contributing or motivating factor in bringing about the adverse employment action, as opposed to the but-for cause." *Asante-Addae*, 2015 WL 1471927, at *23 (citation and internal quotation marks omitted).  *See also Percoco v. Lowe's Home Ctrs., LLC*, 208 F. Supp. 3d 437, 448 (D. Conn. 2016) ("Under the CFEPA, this Court applies the motivating-factor test."); *Wallace v. Caring Sols., LLC*, 213 Conn. App. 605, 626 (2022) (holding that "the motivating factor test, and not the but-for test, remains the applicable causation standard for claims of discrimination under the CFEPA," irrespective of *Gross*, 557 U.S. at 176).

Despite this difference in legal standard, the Court's conclusion is the same.  The ADEA's but-for causation requirement is more onerous than the CFEPA's motivating-factor causation requirement.  *See Tremalio*, 2013 WL 5445258, at *21 ("Because [the] [p]laintiff has offered evidence sufficient for a jury to find that his age was a 'but for' cause of his termination, a higher burden than that required by CFEPA, [the] [p]laintiff has also offered sufficient evidence for his CFEPA age discrimination claim."); *Asante-Addae*, 2015 WL 1471927, at *23 (noting that the

CFEPA imposes a "less onerous standard" than the ADEA). Accordingly, all the genuine disputes of fact that could lead a reasonable jury to find that age was the but-for cause of Wang's decision to terminate Plaintiff, discussed above, could also lead a reasonable jury to find that age was a motivating factor underlying Wang's decision to terminate Plaintiff. Thus, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's CFEPA claim.

### IV.     CONCLUSION

For the reasons described above, Plaintiff's motion to strike, ECF No. 101, is GRANTED IN PART and DENIED IN PART, and Defendants' motion for summary judgment, ECF No. 88, is DENIED. The Court will convene a status conference to schedule deadlines for the filing of pretrial submissions and trial dates.

**SO ORDERED** at Hartford, Connecticut, this 13th day of February, 2023.

 /s/ Sarala V. Nagala
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE